IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

In re Application of:

    **ROZ TRADING LTD.**
    **Elizabeth Square**
    **P.O. Box 847**
    **Grand Cayman**
    **Grand Cayman Islands**
    **British West Indies,**

                           **Applicant.**

            **1:06-cv-02305-WSD**

## OPINION AND ORDER

This matter is before the Court on the Application of Roz Trading, Ltd. for

an Order Directing The Coca-Cola Company to Produce Documents Pursuant to 28

U.S.C. § 1782 For Use in A Proceeding Before a Foreign Tribunal [1]

("Application")[1], Respondent The Coca-Cola Company's Opposition to

---

[1] Local Rule 7.1D limits memoranda supporting motions to 25 pages in length, and reply briefs to 15 pages. The Rule also requires parties to "certify that the brief has been prepared with [proper font and point selections]." The Court notes that the Memorandum in Support of Petitioner's Application is 33 pages, and does not contain the required certification. Although Local Rule 7.1F authorizes the Court in its discretion to decline to consider the Application, the Court chooses to excuse Petitioner's failure to comply with the Local Rules. The Court encourages Petitioner to prepare future submissions in accordance with the Rules.

Petitioner's Application for Discovery Pursuant to 28 U.S.C § 1782 [7]

("Response,"), and Roz Trading's Reply in Support of Its Application for

Discovery Under 28 U.S.C. § 1782 [8] ("Reply").

## I.    BACKGROUND

This dispute concerns Roz Trading, Ltd.'s ("Petitioner's") request that the

Court compel The Coca-Cola Company ("Respondent") to produce documents for

use in arbitration proceedings ("foreign arbitration") before an arbitral panel of the

International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna

(the "Centre"), in which Petitioner, Respondent's subsidiary The Coca-Cola Export

Company ("CCEC"), and others are involved.  The foreign arbitration concerns an

alleged breach of contract between Petitioner and CCEC.  The contract was entered

into in connection with a joint venture between Petitioner, CCEC, and the

government of Uzbekistan (the "joint venture").  Petitioner alleges the government

of Uzbekistan violently seized Petitioner's interest in the joint venture.[2]  Petitioner

alleges that its employees, fearful for their lives, left Uzbekistan.  Under the

circumstances of their departure, Petitioner claims its employees were unable to

---

[2] Petitioner alleges that the seizure was apparently motivated in part by the divorce of Petitioner's president from the President of Uzbekistan's daughter.

take any corporate documents with them, and that they have been to this day unable to return to Uzbekistan to retrieve them. Petitioner alleges that CCEC and the Respondent assisted the Uzbek government in eliminating Petitioner from the joint venture.

Petitioner has filed a claim before an arbitral panel of the Centre, pursuant to the contract governing the joint venture. Petitioner requests this Court to exercise its discretion under 28 U.S.C. § 1782(a) to compel Respondent to produce documents for those arbitration proceedings.

In this case, two issues determine whether the Court will grant Petitioner's Application: i) whether the Court has the authority to entertain the Application, specifically, whether the scope of 28 U.S.C. § 1782(a) includes proceedings before an arbitral panel of the Centre; and ii) whether the factors listed in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241 (2004) favor granting the Application.

## II.   DISCUSSION

### A.   <u>Authority to Entertain the Application</u>

The Court first considers whether § 1782(a) authorizes it to entertain the Application. Section 1782(a) provides:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement. The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a) (2006).

Section 1782(a) allows the Court to entertain Petitioner's request if: i) the target of the discovery "resides or is found" within this District; ii) the requesting party is a foreign or international tribunal or an "interested person" in the foreign proceeding; and iii) the discovery is requested "for use in a proceeding in a foreign or international tribunal."

Respondent does not dispute that the first two conditions have been met. Respondent's corporate headquarters are located in this judicial district, and Petitioner is a party to the arbitration for which the discovery is requested. Respondent also does not dispute that Petitioner requests discovery for use in a foreign proceeding.

Respondent argues, however, that the Centre is not a "tribunal" within the meaning of the statute.  Respondent contends that, because the Centre is a private institution whose proceedings are voluntary and arbitral, an arbitral panel convened by the Centre is not a "tribunal" within the meaning of § 1782(a).

This issue is both interesting and one of first impression in this Circuit.  The seminal Supreme Court case interpreting § 1782(a) is <u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241 (2004).  Although the Supreme Court in <u>Intel</u> did not address the precise issue of whether private arbitral panels are "tribunals" within the meaning of the statute, it provided sufficient guidance for this Court to determine that arbitral panels convened by the Centre are "tribunals" within the statute's scope.

In <u>Intel</u>, the Supreme Court held that the Directorate-General of Competition for the Commission of the European Communities ("DG-Competition") was a

5

"tribunal" within the meaning of § 1782(a).   This body "is the European Union's primary antitrust law enforcer." <u>Id.</u> at 250.  The DG-Competition accepts antitrust complaints and conducts preliminary investigations. <u>Id.</u> at 254.  The DG-Competition's decisions are "subject to review in the Court of First Instance and the European Court of Justice." <u>Id.</u> at 255.

The Supreme Court's reasons for finding the DG-Competition to constitute a "tribunal" in that case are instructive.  The Supreme Court began by restating its firmly held principle that "in all statutory construction cases, we begin . . . with the language of the statute." <u>Id.</u> <u>quoting</u> <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438, 450 (2002).  The Supreme Court began its statutory construction by noting that, in a 1964 amendment to § 1782, "Congress deleted the words 'in any judicial proceeding pending in any court in a foreign country,' and replaced them with the phrase 'in a proceeding in a foreign or international tribunal.'" <u>Intel</u>, 542 U.S. at 248-49 (citations omitted).  The Supreme Court also observed:  "Congress understood that change to provide the possibility of U.S. judicial assistance in connection with administrative and quasi-judicial proceedings." <u>Id.</u> at 258 (internal quotation omitted).  The Supreme Court stated expressly, albeit in dicta: "[T]he term 'tribunal' . . . includes investigating magistrates, administrative and

6

<u>arbitral</u> tribunals, and quasi-judicial agencies, as well as conventional . . . courts."

<u>Id.</u>, <u>quoting</u> Hans Smit, <u>Int'l Lit. Under the United States Code</u>, 65 Colum. L. Rev.

at 1026-27 (1965) (emphasis added).

In considering the status of the DG-Competition, the Supreme Court found

that § 1782(a) "authorizes, but does not require, a federal district court to provide

assistance to a complainant in a European Commission proceeding that leads to a

dispositive ruling, i.e., a final administrative action both responsive to the

complaint and reviewable in court." <u>Id.</u> at 255.  The Court also reasoned that the

DG-Competition "is a § 1782(a) 'tribunal' when it acts as a first-instance

decisionmaker."  <u>Id.</u> at 247.  That is, the Supreme Court found the DG-

Competition to constitute a § 1782(a) tribunal to the extent that it acted as a first-

instance decisionmaker, capable of rendering a decision on the merits, and as part

of the process that could ultimately lead to final resolution of the dispute.

A finding that an arbitral panel of the Centre is a "tribunal" within the

meaning of § 1782(a) is consistent with the reasoning in <u>Intel</u>.  Although <u>Intel</u> did

not expressly hold arbitral bodies to be "tribunals," it quoted approvingly language

that included "arbitral tribunals" within the term's meaning in § 1782(a).  The

Supreme Court also determined the DG-Competition to constitute a "tribunal"

7

when it acted as a first-instance decisionmaker in a proceeding "that leads to a dispositive ruling, i.e., a final administrative action both responsive to the complaint and reviewable in court." Id. at 255. The Centre's arbitral panels are similarly "first-instance decisionmaker[s]" that issue decisions "both responsive to the complaint and reviewable in court." Respondent does not dispute that the Centre "is constituted to hear disputes, weigh evidence, and issue rulings that will finally bind the parties in accordance with its Rules . . ." (Memorandum of Law in Support of Pet. App. at 11.) Respondent also does not dispute that the Centre's orders "are enforceable in Austrian courts. . ." (Id.) The Centre, when examined under the same functional lens with which the Supreme Court in Intel examined the DG-Competition, must necessarily be considered a "tribunal" under § 1782(a).

Statutory construction of § 1782(a) confirms this conclusion. The first step of statutory construction is to start "with the words of the statutory provision." CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222 (11th Cir. 2001). When "the words of a statute are unambiguous . . . this first canon is also the last: judicial inquiry is complete." Merritt v. Dillard Paper Co., 120 F.3d 1181, 1186 (11th Cir. 1997). See also United States v. Turkette, 452 U.S. 576, 580 (1981). When examining the words of a statute, "[i]n the absence of a statutory definition

of a term, we look to the common usage of words for their meaning." <u>CBS</u>, 245

F.3d at 1222.  When the words used are terms of art, a "cardinal" rule of statutory

construction is that:

> [W]here Congress borrows terms of art in which are
> accumulated the legal tradition and meaning of centuries
> of practice, it presumably knows and adopts the cluster of
> ideas that were attached to each borrowed word in the
> body of learning from which it was taken and the
> meaning its use will convey to the judicial mind unless
> otherwise instructed.  In such case, absence of contrary
> direction may be taken as satisfaction with widely
> accepted definitions, not as a departure from them.

<u>Morissette v. United States</u>, 342 U.S. 246, 263 (1952).

When the language of a statute is unambiguous, courts are not entitled to

impose their own limitations upon it.  <u>See</u> <u>e.g.</u>, <u>Turkette</u>, 542 U.S. at 587 (reversing

the First Circuit's construction of RICO because the limitations imposed were

mandated by "neither the language nor structure of RICO . . .").  Unless there is a

"clearly expressed legislative intent to the contrary,  [unambiguous] language must

ordinarily be regarded as conclusive."  <u>Id.</u> at 580 (quotation omitted).

Both the "common usage" and "widely accepted definition" of "tribunal"

include arbitral bodies.  <u>See</u>, <u>e.g.</u>, <u>Scherk v. Alberto-Culver Co.</u>, 417 U.S. 506,

519-25 (1974) (referring to the International Chamber of Commerce of Paris as a

"tribunal");  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 627 (1985) (referring to arbitral bodies generally as "tribunals"); Baltin v. Alaron Trading Corp, 128 F.3d 1466, 1468 (11th Cir. 1997) (referring to an arbitral body as a "tribunal").  See also Smit, International Litigation at 1026-027 ("the term 'tribunal' . . . includes investigating magistrates, administrative and arbitral tribunals, and quasi-judicial agencies , as well as conventional . . . courts."); Black's Law Dictionary, "tribunal" (8th ed. 2004) (defining "tribunal as a "court or other adjudicatory body.") (emphasis added); William Blackstone, 3 Commentaries 17 (London, Strahan, Cadell, and Prince 1787) (10th ed.) (referring to arbitral bodies as "tribunals"; Joseph Story, Commentaries on Equity Jurisprudence § 1457 at 686 (Boston, Little Brown and Co. 1866) (9th ed.) (referring to private arbitration proceedings as "tribunals").

The history of amendment to the statute supports a plain reading of the term "tribunal."  In 1964, Congress by amendment deleted language that previously limited the type of adjudicatory body for which § 1782(a) could be invoked. Congress expressly struck the phrase "judicial proceeding," and replaced it with "international or foreign tribunal."  The clear import of the change is to broaden

the scope of the statute to include non-judicial proceedings.[3]  The Supreme Court

in <u>Intel</u> noted, "The legislative history of the 1964 revision . . . reflects Congress'

recognition that judicial assistance would be available whether the foreign or

international proceeding or investigation is of a criminal, civil, administrative, or

other nature." 542 U.S. at 259 (internal quotation omitted).  That is, the type of

proceeding that Congress intended to benefit from judicial assistance under § 1782

is broad.

 The language of § 1782(a) is unambiguous.  The common usage and widely

accepted definition of "tribunal" are consistent with the structure of the statute.

Reading the statute as a "consistent whole," <u>Burlison v. McDonald's Corp.</u>, 455

F.3d 1242, 1245-46 (11th Cir. 2006), the Court finds that "tribunal" should be

construed consistent with its common usage and widely accepted definition.  There

is no clearly expressed legislative intent that the term "tribunal" does not include

arbitral panels such as those convened by the Centre or that the term should be

construed other than as it is commonly defined.  In the absence of ambiguity, it

would be improper for the Court to consider legislative history or impose its own

---

[3]  Had Congress wanted to impose the limitation advanced by Respondent, it would have been a simple matter to add the word "governmental" before "the word "tribunal" in the 1964 amendment.

limitations upon the meaning of the statute's terms.  Turkette, 542 U.S. at 587

The Centre is an arbitral body whose panels function in accordance with the widely accepted definition of the term "tribunal"  The Court holds that the Centre is a "foreign or international tribunal" within the meaning of § 1782(a).

Respondent argues that Intel does not apply and that the Court should instead be guided by the decisions in Nat'l Broad. Co., Inc. v. Bear Stearns & Co., Inc., 165 F.3d 184 (2d. Cir. 1999) and Republic of Kazahkstan v. Beidermann, 168 F.3d 880 (5th Cir. 1999).  These decisions are cited to support Respondent's contention that only governmental bodies qualify as "tribunals" under § 1782(a).  Both of these cases were decided five years before Intel.  Their reasoning, and particularly that of Nat'l Broad. Co., is materially impacted by Intel.  The reasoning in Intel demonstrates the structural and analytical flaws in the Second and Fifth Circuits' interpretations of § 1782(a).

The Second Circuit in Nat'l Broad. Co.  found § 1782(a) to be ambiguous with respect to whether the term "tribunal" includes private arbitral bodies.  The Second Circuit acknowledged that legal and conventional authorities, including cases, treaties, congressional statements, and academic writings including the works of Blackstone and Story, define the term "tribunal" to include private

arbitral panels.  Despite acknowledging this uniformly understood definition of "tribunal," the court reached the inconsistent conclusion that the term is ambiguous. 165 F.3d at 188.  It summarily concluded that "the fact that the term 'foreign or international tribunals' is broad enough to include both state-sponsored and private tribunals fails to mandate a conclusion that the term, as used in § 1782, does include both." Id.  The court then concluded that "the term 'foreign or international tribunal' is sufficiently ambiguous that it does not necessarily include or exclude the arbitral panel at issue here." Id.  The court turned to the legislative history of § 1782(a) to resolve this "ambiguity," and held ultimately that the legislative history suggested that the term "tribunal" does not include private arbitral panels.[4]  Id.

The Supreme Court's decision in Intel undermines the reasoning of Nat'l Broad. Co.  The Intel court reviewed the legislative history of § 1782, and found a

_____

[4] The Second Circuit started with the premise that the term "tribunal" is ambiguous.  In essence, the Second Circuit reasoned that even though the common usage and widely accepted definition of "tribunal" include private arbitral bodies, it was free to impose its own limitations on the statute.  This is precisely the type of conduct that courts engaged in statutory construction are directed to avoid. Turkette, 542 U.S. at 580, 587; CBS, 245 F.3d at 1222.  Even if the Second Circuit found "contrary indications" to a plain reading of "tribunal" in the legislative history, it was improper to use such history to "cloud a text that is clear." CBS, 245 F.3d at 1222.

legislative intent to broaden the scope of the term "tribunal."  It noted specifically that "[t]he legislative history of the 1964 revision . . . reflects Congress' recognition that judicial assistance would be available whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, <u>or other</u> <u>nature</u>."  <u>Intel</u>, 542 U.S. at 259 (emphasis added) (internal quotation omitted).  The Supreme Court's interpretation and application of the legislative history contradicts the interpretations and applications of the Second and Fifth Circuits, which incorrectly concluded that Congress intended to limit the availability of judicial assistance under §1782 to governmental–that is criminal, civil, or administrative–proceedings.[5]

---

[5] The Second Circuit's analysis of the legislative history is itself not compelling. The Second Circuit relied primarily on the fact that the term "international tribunal" in 22 U.S.C. §§ 270-270g, the statute replaced by § 1782, "applied only to intergovernmental tribunals." <u>Nat'l Broad. Co.,</u> 165 F.3d at 189-90.  Section 270, as quoted by the Second Circuit, read: "Whenever any claim in which the United States or any of its nationals is interested is pending before an international tribunal or commission, established pursuant to an agreement between the United States and any foreign government or governments . . ." <u>Id.</u> at App. A. While the Second Circuit is correct that § 270 was limited to intergovernmental tribunals, it failed to note that the statutory language was <u>expressly</u> so limited.  The fact that Congress included the express limitation "established pursuant to an agreement between the United States and any foreign government or governments" indicates that when Congress wants to limit a statute to apply only to governmental bodies, it is capable of doing so.  The Second Circuit's interpretation of §§ 270-270g render this express limitation meaningless, in violation of the "longstanding .

The definition of the term tribunal is, in basic terms, a body that performs a specific adjudicatory function.  By rejecting "categorical limitations" on the scope of § 1782(a), id. at 256, and instead determining whether the DG-Competition constituted a "tribunal" within the meaning of the statute by analyzing its function, the Supreme Court elected to treat the term "tribunal" in accordance with the term's widely accepted definition.  That is, it is the function of the body that makes it a "tribunal," not its formal identity as a "governmental" or "private" institution.  Where a body makes adjudicative decisions responsive to a complaint and reviewable in court, it falls within the widely accepted definition of "tribunal," the reasoning of Intel, and the scope of § 1782(a), regardless of whether the body is governmental or private.  The Supreme Court's approach recognizes this reality, and thus undermines the formalistic approach taken by the Second and Fifth Circuits.[6]

---

. . general principle that courts must not interpret one provision of a statute to render another provision meaningless."  Burlison, 455 F.3d at 1247.

[6] The Fifth Circuit's opinion in Republic of Kazahkstan v. Beidermann followed expressly Nat'l Broad. Co.  Like Nat'l Broad. Co., Beidermann begins with the unsupported premise that the term "tribunal" is ambiguous.  168 F.3d at 880-81.  Biedermann also relies on legislative history and policy judgment to construe the statute.  Biedermann follows the same incorrect reasoning as Nat'l Broad. Co., and was likewise decided without the benefit of Intel.  For the same

For these reasons, this Court declines to follow the Second and Fifth Circuits

because, in light of Intel, they are not persuasive authority.  The Court instead

relies instead on the statutory construction above and the reasoning in Intel.

B.      The § 1782(a) Petition

It is within the Court's discretion to grant or deny an application under 28

U.S.C. § 1782(a). Intel, 542 U.S. at 246.  Several factors guide the Court's

consideration of an application under § 1782(a):

> First, when the person from whom discovery is being
> sought is a participant in the foreign proceeding ... the
> need for § 1782(a) aid is generally not as apparent as it
> ordinarily is when evidence is sought from a
> nonparticipant in the matter arising abroad. A foreign
> tribunal has jurisdiction over those appearing before it,
> and can itself order them to produce evidence. . . . .
> Second, as the 1964 Senate report suggests, a court
> presented with a § 1782(a) request may take into account
> the nature of the foreign tribunal, the character of the
> proceedings underway abroad, and the receptivity of the
> foreign government or the court or agency abroad to U.S.
> federal-court judicial assistance.

Id. at 244.  See also Lopes v. Lopes, 180 Fed. Appx. 874, 877 (11th Cir. 2006).

In exercising its informed discretion, the Court will, in addition to these factors,

---

reasons the Court declines to follow Nat'l Broad. Co., it also declines to follow

Beidermann.

consider the scope of the information requested and its relation to the proceedings abroad.  Cf. Intel, 542 U.S. at 245 (noting that "unduly intrusive or burdensome requests may be rejected or trimmed.").

Respondent does not dispute that it is not a participant in the foreign proceeding, and notes that the agreement governing the joint venture was entered into between Petitioner and CCEC.  Because Respondent was not a named party to that agreement, it appears that Petitioner cannot compel Respondent to the arbitral proceeding, and that the Centre does not have jurisdiction to compel discovery from Respondent.  These circumstances weigh in favor of ordering discovery, because the foreign tribunal cannot "itself order [Respondent] to produce evidence."  Id. "[T]he person from whom discovery is sought must . . . be a person or entity outside of the jurisdiction of the foreign tribunal . . ."  Lopes, 180 Fed. Appx. at 877 (emphasis added) (internal quotation omitted).  Respondent meets this criteria.

The nature of the Centre, its character as a place for formal dispute resolution between international parties, and its likely receptivity of the aid of this Court, all weigh in favor of providing judicial assistance.  The Centre is an international commercial arbitral body located in Vienna.  According to Article 1

17

of the Centre's Rules of Arbitration, the purpose of the Centre is "to make arrangements for the settlement by arbitration of disputes in which not all contracting parties . . . had their place of business or their normal residence in Austria . . ."  The Centre is fundamentally international in nature.  It must rely on the aid of courts beyond its jurisdiction–such as United States District Courts acting pursuant to § 1782(a)–to enforce its demands and to aid its inquiries, both within and without Austria.

The Centre is receptive to aid from courts such as this one.  Article 589 of the Centre's Rules of Civil Procedure effective at the time Petitioner filed its Statement of Claims reads:

> 1. Those judicial acts considered necessary by the arbitrators but which they have no jurisdiction to undertake will be carried out by the State Court which has jurisdiction on the application of the arbitrators. In case of doubt the application is to be made to the District Court in whose district the act is to be carried out or the evidence to be taken.
>
> 2. The Court to which the application is made shall accede to it insofar as it is not legally inadmissable. In particular the Court shall also take those decisions regarding taking of evidence which are reserved by the present statute in the case of taking of evidence on commission to the Court hearing the case.

The Centre's Rules embrace discovery sought through mechanisms such as
§ 1782(a).  This circumstance also weighs in favor of the Court granting
Petitioner's request.

Petitioner claims, and Respondent does not dispute, that many of the
documents previously in its possession were seized or made unavailable to it by the
Uzbek government, and are now in the possession of Respondent.  Thus,
Respondent may be the only source for at least some of the documents requested.[7]
Petitioner claims further that Respondent, although not a formal party to the
foreign proceeding, participated in the events that made these documents
unavailable.

Respondent suggests that Petitioner should first seek discovery from CCEC
through the arbitration proceedings.  Respondent argues, "If the arbitration panel
orders Coca-Cola Export to produce documents that are found only in the
possession, custody, or control of The Coca-Cola Company, The Coca-Cola

---

[7] Petitioner claims that some of the documents in Respondent's possession
are purportedly "public" because they are held by the Uzbek government.  The
Court accepts that, as a practical matter, these materials are not available to
Petitioner.  Petitioner alleges that acquiring these documents from the Uzbek
government would require Petitioner's employees to undertake a substantial risk of
harm or imprisonment.

Company will have a strong incentive to cooperate with its subsidiary." (Resp.
Brief in Opp. at 15.)  This argument is not persuasive.  Section 1782(a) does not
contain an exhaustion requirement.  The Petitioner meets the requirements of the
statute, and is thus entitled under the present circumstances to seek judicial
assistance for use in the foreign proceeding, regardless of other discovery means
that may be available.  Discovery is particularly appropriate where, as here, the
practical availability of documents requested through other means of discovery is
uncertain.

This case presents a unique set of facts.  Petitioner suggests, and Respondent
does not deny, that Respondent was in some measure involved in the events
underlying the arbitration.  Petitioner suggests, and Respondent does not deny, that
some of the documents at issue in the arbitration may be in Respondent's exclusive
possession, custody, and control.  Petitioner also argues, and Respondent also does
not deny, that many of the purportedly "public" documents on Petitioner's
discovery list are closely held by the government of Uzbekistan, and cannot be
accessed by Petitioner without great risk to its personnel.  Respondent, as the
CCEC's parent company, may have superior or exclusive access to many of the

documents relevant to this dispute.[8]  In light of Petitioner's allegations that Respondent was involved to some degree in the underlying dispute, and in view of the likelihood that Respondent has unique access to relevant documents, the Court will exercise its discretion under § 1782(a).

Under § 1782(a), the Court is entitled to order discovery "in accordance with the Federal Rules of Civil Procedure."  "[U]nduly intrusive or burdensome requests may be rejected or trimmed."  Intel, 542 U.S. at 245.  This Court will aid Petitioner to obtain discovery consistent with the scope imposed by Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Petitioner first requests "an order directing [Respondent] to produce all documents relating to [Petitioner], the government of Uzbekistan, the Maqsudi family, the Karimov family, and [the joint venture], including its newest partner

---

[8]  The Court notes that Respondent's subsidiary CCEC apparently has not yet disclosed whatever materials it has, which also may be in Respondent's possession.

21

. . . Zeromax."  (Memorandum of Law in Support of  Peti. App. at 29.)  This request is overbroad on its face.  Petitioner demands information in several wide categories without limitation as to time, or place, and virtually without limitation as to subject matter.

Alternately, Petitioner presents a list of fifty-four (54) specific documents or document categories that it seeks from Respondent ("Documents to Be Produced") (Pet. App., Exh. A).  The Court has considered each of these requests, and they appear to the Court generally relevant to the dispute, as described in the Statement of Claims filed by Petitioner in the proceedings before the Centre.[9]

The Court will grant the petition with respect to Petitioner's "Documents to be Produced," with the following limitations:

1.  All requests shall be limited to the period of January 1, 2000 to the date of this Order ("Order Date"), with the exception that requests for documents embodying communications to or from the Uzbek government or its officials.  Requests for documents embodying communications to or from

_____

[9] The requests in many respects circumstantially validate Petitioner's claims that some of its documents were actually or constructively seized by the Uzbek government.

the Uzbek government or its officials shall be limited to the period of January 1, 1992 to the Order date.[10]

2.  The requests are limited to the extent that documents concerning private third parties such as Zeromax need only be produced if they pertain to the joint venture, communications with the Respondent or members of the joint venture from January 1, 2000 to the Order Date, inclusive, or the circumstances of Petitioner's expulsion from Uzbekistan.

In accordance with the Rule  37(a)(2)(A), the parties are directed to work in good faith toward resolving any disputes regarding the production of this discovery prior to seeking the aid of this Court.  If the parties are unable to resolve any disputes in good faith, they are directed to contact the Court to discuss the method for addressing any disputes they are unable to resolve between themselves.

Accordingly,

---

[10]  The January 1, 2000, date appears from the submissions to be a reasonable time period for discovery regarding the actions that lie at the heart of this dispute.  Petitioner seeks documents regarding the original formation of the CCEC and of the joint venture.  The Court is not persuaded that these documents are potentially relevant, and they are not required to be provided.  To the extent that Petitioner's requests require the production of documents concerning amendments or alterations to the joint venture that were created or dated after January 1, 2000, these materials are required to be produced.

**IT IS HEREBY ORDERED** that the Application of Roz Trading, Ltd. for an Order Directing The Coca-Cola Company to Produce Documents Pursuant to 28 U.S.C. § 1782 For Use in A Proceeding Before a Foreign Tribunal [1] is **GRANTED**.  Pursuant to this Order, Respondent is ordered to produce all documents responsive to the numbered requests in  Petitioner's "Documents to be Produced" within its possession, custody, or control.  These requests are limited as discussed above.  Respondent is directed to produce the materials required by this Order on or before 5:00 p.m., EST., on January 20, 2007.

**SO ORDERED**, this 19th day of December, 2006.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

24