## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**In re Application of:**

    **ROZ TRADING LTD.**
    **Elizabeth Square**
    **P.O. Box 847**
    **Grand Cayman**
    **Grand Cayman Islands**
    **British West Indies,**

                      **Applicant.**

               **1:06-cv-02305-WSD**

## OPINION AND ORDER

This matter is before the Court on The Coca-Cola Company's Emergency Motion for Stay Pending Appeal [12], Roz Trading Ltd.'s Opposition to Coca-Cola's Emergency to Stay Pending Appeal [14], and Respondent The Coca-Cola Company's Reply in Further Support of Its Emergency Motion for a Stay Pending Appeal [15] .

## I.    BACKGROUND

On December 19, 2006, this Court issued an Order (the "Order") granting Petitioner Roz Trading, Ltd.'s ("Petitioner") Application for an Order Directing The Coca-Cola Company to Produce Documents Pursuant to 28 U.S.C. § 1782 For

Use in a Proceeding Before a Foreign Tribunal.  The Order compelled The Coca-Cola Company ("Respondent") to produce certain specified documents or document categories to Petitioner by January 20, 2007, for use in an arbitration hearing before an arbitral panel convened by the International Arbitral Centre of the Austrian Federal Economic Chamber in Vienna (the "Centre"), between Petitioner, Respondent's subsidiary the Coca-Cola Export Company ("CCEC"), and others.  The  arbitration concerns an alleged breach of contract between Petitioner and CCEC, and Respondent is factually implicated in the circumstances surrounding the breach.  The facts leading up to the arbitration are set forth more fully in the Court's Order.

In the Order, this Court held: (i) that the term "tribunal" in § 1782(a) encompassed private arbitral tribunals such as an arbitral panel of the Centre; and (ii) that the factors of Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004) counseled granting Petitioner the discovery it sought.

Respondent has appealed the Order.  Respondent contends that it is likely to prevail upon appeal, and that its likelihood of prevailing on appeal and the equities demand a stay pending appeal in the interests of justice.  For the reasons below, Respondent's request is denied.

## II.    DISCUSSION

The grant of an emergency motion to stay a trial court's mandate is an "exceptional response . . ." Garcia-Mir v. Meese, 781 F.2d 1450, 1453 (11th Cir. 1986).  A grant of stay depends upon four factors: "(1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether the issuance of a stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." Venus Lines Agency v. CVG Industria Venezolana De Aluminio, C.A., 210 F.3d 1309, 1313-1314 (11th Cir. 2000) citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987).  The first factor is ordinarily the most important.  See Garcia-Mir, 781 F.2d at 1453.  Respondent "may also have his motion granted upon a lesser showing of a 'substantial case on the merits' when 'the balance of equities . . . weighs heavily in favor of granting the stay.'" Id.

A.    Success Upon the Merits

Respondent first argues that it has a probable likelihood of success on the merits.  In support of its contention, Respondent rehashes its arguments based on the pre-Intel decisions Nat'l Broad Co. v. Bear Stearns & Co., 165 F.3d 184 (2d Cir. 1999) and Republic of Kazahkstan v. Biedermann Int'l, 168 F.3d 880 (5th Cir.

1999).  As the Court explained in its Order, those opinions are inconsistent with

the Supreme Court's guidance in <u>Intel</u>, impose impermissible judicial limitations

into the unambiguous text of § 1782(a), and conduct legislative history analyses

that are both unnecessary and unpersuasive, particularly in light of <u>Intel</u>.

Respondent does not show a likelihood of success on this issue by simply repeating

its earlier arguments, which the Court previously considered.[1]

Respondent next argues that the Eleventh Circuit "may well find" that the

Court abused its discretion in applying the <u>Intel</u> factors: (i) whether the Respondent

is a participant in the foreign proceeding; (ii) the nature of the foreign tribunal and

---

[1]  Respondent raises one new authority in support of its argument that <u>Nat'l Broad Co.</u> is correct: <u>In re Oxus Gold, PLC</u>, No. 06-82, 2006 WL 2927615 (D.N.J. Oct. 10, 2006).  <u>Oxus Gold</u> is an unpublished New Jersey District Court case that cites both <u>Intel</u> and <u>Nat'l Broad Co.</u> approvingly.  <u>Oxus Gold</u> dealt with whether an arbitral panel of the United Nations Commission on International Law was a "tribunal" under § 1782(a).  <u>Oxus Gold</u> did not address the issue before this Court–whether a private arbitral body can constitute a "tribunal" under § 1782(a). Although <u>Oxus Gold</u> cited <u>Nat'l Broad Co.</u> for the proposition that private arbitral bodies are not § 1782(a) "tribunals," the statement was not necessary to the holding that an arbitral tribunal under the auspices of the United Nations is a § 1782(a) tribunal, and is thus dicta.

<u>Intel</u> directs the Court to interpret § 1782 by its terms.  The text of § 1782(a) provides no basis for distinguishing between "public" and "private" arbitral tribunals.  Section 1782 authorizes courts to aid party seeking discovery for proceedings in foreign or international tribunals of "criminal, civil, administrative, or other nature."  <u>Intel</u>, 542 U.S. at 259.

the character of the proceedings underway abroad, and (iii) the receptivity of the

foreign tribunal to U.S. federal-court judicial assistance.

Respondent argues that discovery is more readily available from participants in the

arbitration, and that the Centre is not guaranteed to be receptive to the aid of this

Court.

Respondent is not likely to prevail on its first argument.  Respondent does

not offer any support for its claim that the discovery sought is available from

participants in the arbitration.  Respondent also does not suggest how this claim, if

true, would be relevant to the <u>Intel</u> analysis.  Petitioner and the Court have

suggested that Respondent seems likely to have exclusive possession, custody, or

control of responsive documents.  Respondent does not deny the suggestion, and

states only that it "is presently unaware of any pertinent documents that are in its

exclusive possession, custody, or control."  (Emergency Mot. for Stay at 9.)

Respondent is not a party to the arbitration, and on this ground alone the first

<u>Intel</u> factor is satisfied.  Either Respondent has responsive documents, in which

case they may not be discoverable through any other means and should be

produced; or Respondent does not have responsive documents, in which case the

Order imposes the single obligation of so advising the Petitioner and the Court.

5

Respondent also is not likely to prevail on its argument regarding the second and third Intel factors.  Respondent argues that the arbitral panel may choose not to accept materials compelled to be produced under § 1782.  Respondent claims that because there is no way to predict whether the arbitral panel will accept § 1782 discovery, the Court should not find the panel "receptive" to such discovery.

In Intel, the Supreme Court rejected the "foreign discoverability" rule, 542 U.S. at 254, and expressly recognized that § 1782 aid was appropriate even in situations where the tribunal would not order such discovery itself, or might decide not to accept all discovery properly ordered pursuant to § 1782(a).  Id. at 262-63. "[T]he foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate."  Id. at 262.

A similar situation exists here.  The parties do not contend that the Centre has a policy against accepting the aid of U.S. courts.  It is thus proper for this Court to grant a § 1782 request, even if the specific panel deciding the underlying dispute would not order similar discovery or ultimately decides not to accept the specific discovery ordered by this Court.

Respondent further misconstrues the second and third Intel factors.  These factors do not require the Court to find that the tribunal will definitely welcome

6

and accept discovery produced pursuant to § 1782.  The Court is required only to evaluate the nature and character of the proceedings and the overall receptivity of the tribunal to its assistance.  The proceedings before the Centre appear to anticipate that the parties will produce information relevant to the dispute. Although the Centre's arbitral panels are not compelled to accept information produced through discovery, if they choose to request such information, it may only be obtainable through mechanisms such as § 1782(a).  Respondent's claim that the arbitral panel might not be receptive to the aid of this Court is purely speculative.  Thus, it appears the Centre is fundamentally "receptive" to such aid for the purposes of this <u>Intel</u> criteria.

B.    <u>Irreparable Injury to Respondent</u>

Respondent claims that it will be irreparably injured if the Court does not grant its Emergency Motion to Stay, because Petitioner intends to send the materials to Austria, where the Court may lack the authority to retrieve them.[2]

_____

[2]  Section 1782(a) allows the Court to impose conditions on the aid it grants under the statute.  Respondent could, for example, move the Court to impose protective conditions on the use of the materials ordered to be produced, such as limiting Petitioner's ability to use such documents in any subsequent U.S. proceedings or requiring precautions to be taken to preserve confidentiality where appropriate.  Protective measures such as these would likely minimize or eliminate the risk of harm about which Respondent speculates.  Respondent has not made

7

Respondent does not claim that any of the requested documents are privileged or

constitute work-product under United States law.[3]  Respondent does not present the

Court with any authority or other grounds to support a conclusion that being

compelled to produce unprivileged documents will irreparably harm it.  The

potential "injury" claimed by Respondent is thus minimal.  Respondent must only

search for and produce materials responsive to Petitioner's requests.[4]

_____

any such request.

    [3] Respondent reserves the possibility that some documents might enjoy undefined privileges under Uzbek or Austrian law.  Respondent does not identify any such privileges, or claim that they apply to any of the materials required to be produced by the Order.

    [4] Respondent also argues that a failure to grant a stay will necessarily result in the documents passing beyond the control of this Court or the Eleventh Circuit, thus mooting its appeal.  Respondent's argument appears to rely on the principle that "if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever . . . the appeal must be dismissed."  Church of Scientology of California v. U.S., 506 U.S. 9, 12 (1992).  This is not the case here.  The Eleventh Circuit could grant "some meaningful relief" if Respondent prevailed.  For example, the "partial remedy" of ordering Petitioner to destroy or return its copies of the materials, or limiting their use in any subsequent proceedings in this country, is sufficient to prevent the case from being moot.  See id. at 13.

        Even if Respondent's appeal were otherwise moot, the Eleventh Circuit could still find this issue to be capable of repetition yet evading review.  See, e.g., Bourgeois v. Peters, 387 F.3d 1303, 1308 (11th Cir. 2004) (entertaining an otherwise moot appeal where "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the

C.   <u>The Issuance of a Stay Will Likely Substantially Injure Petitioner</u>

Petitioner would face substantial potential injury if a stay were ordered.  If this Court grants the requested stay, Petitioner runs the significant risk that the arbitration will proceed regardless of the stay,[5] and that Petitioner will be unable to obtain relevant documents before the arbitral panel reaches a decision.  As Respondent has noted, neither this Court nor the Eleventh Circuit may compel a tribunal located in Austria to stay resolution of an arbitration during the pendency of Respondent's appeal.  If this Court grants a stay, Petitioner suffers the significant risk of prejudice by a final arbitral decision being reached without consideration of relevant evidence in Respondent's possession.

On balance, Petitioner would bear the risk of more serious harm than Respondent if a stay were issued.  Respondent would risk the possibility of a minor harm: that it produce documents for which it has not claimed privilege or immunity, and be unable to retrieve them.  Petitioner would risk the possibility of a more serious injury: that it suffer significant prejudice in the arbitration due to a

_____

same action again.'').

[5]Petitioner represents that the process of convening the arbitral panel will conclude this month with the appointment of the panel's Chair.

9

lack of relevant evidence in Respondent's possession.

      D.    <u>The Public Interest</u>

      The public interest does not support granting a stay in this case.  Granting a stay would encourage parties to foreign arbitrations to pursue protracted discovery disputes to delay the production of evidence in the hope that a final arbitral decision on the underlying merits might be reached before the discovery dispute is resolved.  "The laudatory goals of [arbitration] will be achieved only to the extent that courts ensure arbitration is an alternative to litigation, not an additional layer in a protracted contest."  <u>B.L.  Harbert Intern., LLC v. Hercules Steel Co.</u>, 441 F.3d 905, 907 (11th Cir. 2006).  This is particularly true where, as here, a delay in the discovery would create the possibility for an interested non-party to the underlying arbitration to deny the arbitral tribunal information that may be relevant to its decision.

      E.    <u>Respondent's Substantial Showing on the Merits</u>

      Respondent last argues that it has a "substantial case on the merits," because the issue of applying § 1782(a) to a private arbitral panel is one of first impression in this circuit, and two pre-<u>Intel</u> circuit courts have ruled that private arbitral bodies are not § 1782(a) tribunals.  The Court acknowledges that this is an issue of first

impression, about which the parties did not provide and the Court could not find specific post-Intel guidance. The lesser "substantial showing" standard only applies, however, when "the balance of equities . . . weighs heavily in favor of granting the stay." Garcia-Mir, 781 F.2d at 1453 (quotations omitted). As shown above, the equities do not weigh heavily in favor of granting a stay–if anything, they weigh against it.

## III.   CONCLUSION

The parties to the arbitration before the Centre ultimately seek a fair and just resolution to their dispute. In Intel, the Supreme Court counseled United States District Courts, upon request, to provide discovery in aid of tribunals of "criminal, civil, administrative, or other nature." 542 U.S. at 259. The Order seeks to provide such aid, thus ensuring that the arbitral panel has access to relevant information upon which it can reach a fair and just resolution.

The factors discussed above, and particularly the likelihood of success on the merits factor, counsel this Court to deny Respondent's request for stay.

Accordingly,

**IT IS HEREBY ORDERED** that The Coca-Cola Company's Emergency Motion for Stay Pending Appeal [12] is **DENIED**.

11

**IT IS FURTHER ORDERED** that in view of time required to brief and consider Respondent's Motion for Stay Pending Appeal, the Court extends to January 31, 2007, the date by which Respondent is required to produce the materials required by the Court's December 19, 2006 order.

**SO ORDERED**, this 11th day of January, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE